# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

PRISCELLA R. SAINTAL,

    Petitioner

v.

DWIGHT NEVEN, et al.,

    Respondents.

Case No.: 2:13-cv-01295-APG-VCF

**Order**

    Priscella Saintal, a Nevada prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. I deny Saintal's habeas petition and deny her a certificate of appealability.

## I.    BACKGROUND

    On March 28, 2006, Saintal was observed entering a Coach Factory Outlet store in Clark County, Nevada and placing a "swingpack" purse in her pants and a wallet in her own purse. ECF No. 14-2 at 86-90, 128.[1] Saintal purchased two wristlets from the store, and as she was exiting the store, she set off the security alarm. *Id.* at 93. After Saintal's purchased items failed to set off the security alarm when management tested them, Saintal was asked to hand over her own purse. *Id.* at 149, 151-52. Saintal refused and left the store without her purchases. *Id.* at 152-53. The store manager followed Saintal to her vehicle and alerted security and law enforcement. *Id.* at 153. After law enforcement arrived, Saintal agreed to exit her vehicle and go back through the security alarm. *Id.* at 155. Saintal did not set off the alarm and agreed to let law enforcement search her vehicle. *Id.* at 156, 208-09. As they were walking back to Saintal's

---

[1] All page citations herein are to the CM/ECF generated document page number in the page header, not to any page number in the original transcript or document.

vehicle, her husband was observed in her vehicle and was found with Coach packaging materials and price tags in his hands. *Id.* at 209-11. The stolen wallet was recovered from a glovebox in Saintal's vehicle and the stolen "swingpack" purse was found in Saintal's husband's vehicle nearby. *Id.* at 213, 218.

On March 12, 2007, following a jury trial, Saintal was found guilty of burglary, grand larceny, possession of stolen property with a value less than $250.00, and conspiracy to possess stolen property. ECF No. 13-2 at 41-42. The count of possession of stolen property was later dismissed. *See* ECF No. 13-2 at 104. Saintal was adjudged guilty of being a habitual criminal and was sentenced to life with parole eligibility after ten years for the burglary conviction, life with parole eligibility after ten years for the grand larceny conviction, and twelve months in the Clark County Detention Center for the conspiracy conviction. *Id.* All counts were ordered to run concurrently. *Id.* Saintal appealed, and the Supreme Court of Nevada affirmed on June 30, 2009. ECF No. 13-2 at 231. Remittitur issued on December 29, 2009. ECF No. 13-3 at 33.

Saintal filed a state habeas petition on May 6, 2010. ECF No. 13-3 at 78. On June 28, 2011, she filed a counseled supplement to her petition. ECF No. 13-4 at 2. Following an evidentiary hearing, the state district court denied Saintal's petition. ECF No. 13-5 at 2; ECF No. 13-5 at 98. She appealed, and the Supreme Court of Nevada affirmed on April 10, 2013. ECF No. 13-5 at 190. Remittitur issued on May 9, 2013. ECF No. 13-5 at 195.

Saintal dispatched her federal habeas petition for filing on or about July 18, 2013. ECF No. 3. She filed an amended petition on October 8, 2013. ECF No. 4. She moved for bail or release pending a decision in this case and "to proceed with appeal on original records of appeals." ECF Nos. 9, 10. The respondents moved to dismiss Saintal's amended petition. ECF No. 12. On March 2, 2015, I denied Saintal's motion for bail or release, her "motion to proceed

with appeal on original records of appeals," and the respondents' motion to dismiss without prejudice, and I appointed counsel for Saintal. ECF No. 19.

Saintal filed a counseled, amended petition on January 19, 2016. ECF No. 29. The respondents moved to dismiss the amended petition, which I granted in part. ECF Nos. 35, 44. Specifically, I dismissed Ground Six as untimely, held that Ground Eight was unexhausted, and held that Ground Ten was unexhausted except to the extent that it alleged cumulative error based on claims of ineffective assistance of counsel. *Id.* at 8. Saintal moved for dismissal of Ground Eight and partial dismissal of Ground Ten pursuant to my order. ECF No. 45. I granted that motion, dismissing Ground Eight and Ground Ten, except to the extent it was based on the cumulative effect of ineffective assistance of counsel. ECF No. 47. The respondents answered the remaining grounds in Saintal's petition on March 7, 2018. ECF No. 54. Saintal replied on June 20, 2018. ECF No. 59.

In the remaining grounds for relief, Saintal alleges the following violations of her federal constitutional rights:

1. Her trial counsel was ineffective for misadvising her about the effect of the State's notice of intent to seek habitual criminal charges.
2. The state district court improperly sentenced her as a habitual criminal.
3. The jury's verdicts were inconsistent.
4. The two life sentences she received for stealing a purse and wallet violate the prohibition against cruel and unusual punishment.
5. Her trial counsel was ineffective for failing to investigate her mental health.
7. The State failed to prove each element of the crimes beyond a reasonable doubt.
9. The state district court improperly refused to instruct the jury regarding the police's failure to document and collect evidence.
10. The cumulative effect of the ineffective assistance of counsel claims deprived her of due process.

ECF No. 29.

////

## II.     STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in habeas corpus cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent under this statute "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent under the statute "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotations omitted)).

## III. DISCUSSION

### A. Ground One

In Ground One, Saintal alleges that her federal constitutional rights were violated because her trial counsel was ineffective for misadvising her about the effect of the State's notice to seek habitual criminal punishment. ECF No. 29 at 14. Saintal explains that if her trial counsel had told her she was eligible to be sentenced as a habitual criminal, she would have accepted the State's offer of five to twenty years. *Id.* In her appeal of the denial of her state habeas petition, the Supreme Court of Nevada held:

> [A]ppellant argues that her trial counsel was ineffective for incorrectly advising her regarding the habitual criminal enhancement, as appellant believes she may have received a lesser sentence through a plea deal had she been advised differently by counsel. While the record regarding the State's plea offers is not clear, counsel stated at the evidentiary hearing that they believed it was to appellant's advantage to go to trial as the State had erroneously cited to NRS 207.012 rather than NRS 207.010 in the notice of intent to seek treatment as a habitual criminal and appellant was not eligible for enhancement under NRS 207.012. Counsel testified that this strategy was successful until the district court received a decision in a different criminal case from this court which concluded there was no prejudice from a similar error in the notice of intent to seek treatment as a habitual criminal. [Footnote 1: This court held on direct appeal that appellant was not prejudiced by the incorrect

initial notice of intent as it provided appellant sufficient notice that the State intended to pursue punishment as a habitual criminal. *Saintal v. State*, Docket No. 49646 (Order of Affirmance, June 30, 2009)].

Appellant fails to demonstrate that she was prejudiced. Appellant fails to meet her burden to demonstrate a reasonable probability that the outcome would have been different as she fails to demonstrate that there was a plea offer she would have accepted, that the district court would also have accepted it, and that it would have been less severe than the actual sentence imposed. *See Lafler v. Cooper*, 566 U.S. ___, ___, 132 S. Ct. 1376, 1385 (2012). Therefore, the district court did not err in denying this claim.

ECF No. 13-5 at 192-93. This ruling by the Supreme Court of Nevada was not objectively unreasonable.

In *Strickland v. Washington*, the Supreme Court of the United States established a two-prong test for analysis of claims of ineffective assistance of counsel, requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*[ *v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'").

A defendant's right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). When the ineffective assistance of counsel claim is based "[i]n the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* at 163. In other words, "prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.* at 168.

The State filed a notice of intent to seek habitual criminal punishment under Nevada Revised Statutes § 207.012. ECF No. 13-1 at 111. At the sentencing hearing, Saintal's trial counsel informed the court that the notice of intent was defective because it cited § 207.012, the habitual felon statute, instead of § 207.010, the habitual criminality statue. ECF No. 13-2 at 67,

69. Saintal's trial counsel explained that "since the only offer that was ever made to [his] understanding was to plead to the small habitual," Saintal was advised "all along she's not eligible for the habitual under the standard that was filed," so it was in her best interest to "go to trial." *Id.* at 68-69. The court held that the State failed to give proper notice to seek habitual criminal punishment and imposed Saintal's sentence. *Id.* at 70.

Thereafter, the State filed an amended notice of intent to seek habitual criminal punishment under § 207.010 and a motion to reconsider sentencing. ECF No. 13-2 at 75, 79. Saintal's trial counsel opposed the motion, stating that both he and Saintal's initial trial counsel informed Saintal "that even with a conviction, the possible sentences were better than agreeing to the Small Habitual standard, and that she could not be sentenced as a violent habitual felon." ECF No. 13-2 at 88. In the opposition, Saintal's trial counsel also explained that "[f]rom the outset defense counsel has advised her that she was eligible for the habitual treatment, but that by filing under the violent offender statute, the state would not be able to meet its burden of proof." *Id.* at 89. At the hearing on the motion to reconsider sentence, the state district court indicated that following Saintal's original sentencing hearing, the Supreme Court of Nevada issued an order in *George v. State* stating that a typographical error in a notice of intent to seek habitual criminal punishment "doesn't matter." ECF No. 13-2 at 94. The state district court then sentenced Saintal as a habitual criminal. *Id.* at 98.

At the post-conviction evidentiary hearing, Saintal testified that her trial counsel "encouraged [her] to go to trial because they said the statute was wrong and there was no way that [she] could be found a violent, habitual criminal. So they pushed the issue of trial. And [she] went to trial." ECF No. 14-6 at 47, 54. Saintal was advised that she was not eligible for habitual criminal punishment the way it was pleaded by the State and that she should not take

any plea bargains due to the incorrect pleading. *Id.* at 54-55. Saintal's trial counsel testified during the post-conviction evidentiary hearing that the defense team knew that Saintal was eligible for habitual criminal treatment "from the beginning of the case" and that they also knew that the notice of intent was defective "early in the case." ECF No. 14-6 at 33, 38.

It is clear that Saintal's trial counsel informed her that she was ineligible to be sentenced as a habitual criminal under Nev. Rev. Stat. § 207.012. It is unclear, however, whether Saintal's trial counsel also informed her that there was a possibility that the state district court could determine that she had adequate notice of the intent to seek habitual criminal punishment under § 207.010 regardless of the citation to the incorrect statute. Nonetheless, I decline to address Saintal's trial counsel's alleged deficiency in this regard because the Supreme Court of Nevada reasonably denied Saintal's claim on the basis that Saintal failed to demonstrate prejudice. *See Strickland*, 466 U.S. at 697 (explaining that a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other).

Saintal's trial counsel, who was not "the first attorney on [Saintal's] case," ECF No. 14-6 at 6, stated during Saintal's original sentencing hearing that "the only offer that was ever made to [his] understanding was to plead to the small habitual." ECF No. 13-2 at 68-69. But Saintal testified at the post-conviction evidentiary hearing that she "[d]id [not] know that the offer on the case prior to even the first trial was a stipulate to small habitual." ECF No. 14-6 at 62. The State responded that "there may not have been an offer conveyed." *Id.* These facts demonstrate that the Supreme Court of Nevada reasonably noted that the record regarding the State's plea offer is unclear. Without clear evidence that a plea offer was made, the Supreme Court of Nevada reasonably concluded that Saintal failed to demonstrate a reasonable probability that the outcome

would have been different because she failed to demonstrate that there was a plea offer that she would have accepted. *Lafler*, 566 U.S. at 163; *Strickland*, 466 U.S. at 694. Therefore, I deny Saintal federal habeas relief for Ground One.

**B.    Ground Two**

In Ground Two, Saintal argues that her federal constitutional rights were violated when the state district court improperly sentenced her as a habitual criminal. ECF No. 29 at 18. She explains that the State's corrected notice of intent to seek habitual criminal punishment provided inadequate, untimely notice. *Id.* at 18-19. She also contends that sentencing her as a habitual criminal based on an unpublished Supreme Court of Nevada decision decided after her trial and sentencing violated due process. *Id.* at 20.

In Saintal's appeal of her judgment of conviction, the Supreme Court of Nevada held:

> Saintal argues that the district court violated her right to due process when it sentenced her as a habitual criminal. Specifically, Saintal contends that she was not provided with 15 days' notice, as required by NRS 207.016(2). We disagree.

> "Generally, the failure to . . . object on the record precludes appellate review." *Grey v. State*, 124 Nev. ___, ___, 178 P.3d 154, 163 (2008). "However, 'this court has the discretion to address an error if it was plain and affected the defendant's substantial rights.'" *Id.* (quoting *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). It is within the district court's discretion whether to sentence a defendant as a habitual criminal pursuant to NRS 207.010. *See* NRS 207.010(2). The State must provide notice of its intent to pursue punishment as a habitual criminal. *Id.* If notice is filed after the defendant is convicted, then sentencing cannot occur for 15 days. NRS 207.016(2).

> Here, before trial, the State filed a notice of intent to seek punishment as a habitual criminal pursuant to NRS 207.012. The notice listed five prior felonies for which Saintal had been convicted. On May 3, 2007, Saintal's sentencing hearing was held. At the hearing, the district court found that Saintal's prior convictions did not qualify her for sentencing as a habitual criminal pursuant to NRS 207.012. Therefore, the district court sentenced Saintal to 48 to 120 months for burglary, 48 to 120 months for grand larceny to run consecutively to the first count, and 12 months for conspiracy to possess stolen property to run concurrently to the first two counts.

On May 4, 2007, the State filed a corrected notice of intent to seek punishment as a habitual criminal pursuant to NRS 207.010. On May 11, 2007, the State moved the district court to reconsider Saintal's sentencing, arguing that it had mistakenly cited NRS 207.012 in the original notice of intent, instead of NRS 207.010. On May 15, 2007, the district court granted the State's motion. The district court stated that, based on this court's decision in the unpublished order of *George v. State*, Docket No. 44338 (Order Affirming in Part, Reversing in Part and Remanding, May 9, 2009), Saintal had been put on notice of the State's intent to seek punishment as a habitual criminal when it filed the original notice before trial began. [Footnote 3: Saintal contends that her right to due process was violated because the district court relied on an unpublished order. We disagree. The *George* order did not create new law, but rather explained how the habitual criminal statutes functioned. Therefore, the district court did not violate Saintal's rights by referencing an order that it used to comprehend the applicable statutes.] Further, that the State had cited the incorrect statute did not diminish the effect of the notice. Therefore, the district court determined that it had jurisdiction to sentence Saintal as a habitual criminal and sentenced her to 10 years to life for burglary, 10 years to life for grand larceny, and 12 months for conspiracy to possess stolen property, all to run concurrently.

We conclude that although 15 days did not pass between when the State filed its corrected notice of intent, and when the district court sentenced Saintal as a habitual criminal, reversible error did not occur. Saintal failed to object during the sentencing hearing that she had not benefited from the 15 day notice period provided for in NRS 207.016. Therefore, she did not properly preserve the issue on appeal. Moreover, Saintal was not prejudiced by the district court sentencing her as a habitual criminal when only 11 days had passed since the State filed its corrected notice of intent. As did the district court, we conclude that Saintal was put on notice of the State's intent to pursue punishment as a habitual criminal when it filed the original notice of intent. Although the State included the incorrect statute in the notice, that does not lessen its effect. Additionally, Saintal has not argued, either on appeal or below, that the full 15-day notice period was necessary for her to prepare her defense against being sentenced as a habitual criminal.

Therefore, we conclude that Saintal was not prejudiced by her sentence as a habitual criminal and, therefore, plain error did not occur. To hold otherwise would be to elevate form over substance. *See, e.g., Fiegehen v. State*, 121 Nev. 293, 302, 113 P.3d 305, 310 (2005).

ECF No. 13-2 at 240-243. This ruling by the Supreme Court of Nevada was reasonable.

Nevada Revised Statutes §207.016(2) provided that "[a] count pursuant to NRS 207.010, 207.012 or 207.014 may be separately filed after conviction of the primary offense, but

if it is so filed, sentence must not be imposed, or the hearing required by subsection 3 held, until 15 days after the separate filing." Although only 11 days passed between the State's filing of the amended notice and Saintal's sentencing, the Supreme Court of Nevada reasonably concluded that Saintal was not prejudiced.

Due process requires that a defendant be given notice of the intent to seek habitual criminal punishment. *Oyler v. Boles*, 368 U.S. 448, 452 (1962). Here, as the Supreme Court of Nevada reasonably noted, Saintal was put on notice of the State's intent to seek habitual criminal punishment on January 24, 2007, when the original notice was filed. Although the original notice cited to the incorrect statute, Saintal was nonetheless effectively put on notice at that time that the State was seeking habitual criminal punishment.

Saintal next argues that her sentence violated due process because she was sentenced as a habitual criminal based on an unpublished Supreme Court of Nevada decision (*George v. State*) issued after her original sentencing. The Supreme Court of Nevada reasonably concluded that this argument lacked merit. That court noted that the *George* order simply explained the functioning of the habitual criminal statutes and did not create new law. *See* ECF No. 32-4 at 4-5. Accordingly, Saintal was not sentenced based on *George*; rather, the state district court merely used *George* to understand the habitual criminal statutes at issue.

Saintal appears to argue that § 207.016(2) is ambiguous and, as such, the rule of lenity demands that ambiguities be construed in her favor. ECF No. 29 at 20. The state district court originally believed that notice was inadequate based on the citation to the incorrect statute in the notice of intent to seek habitual criminal punishment. But after reading *George*, the state district court was in a better position to "comprehend the applicable statutes," as the Supreme Court of Nevada noted. ECF No. 13-2 at 242 n.3. Therefore, any ambiguity about what happens when a

notice of intent to seek habitual criminal punishment cites § 207.012 instead of § 207.010 has been resolved by the Supreme Court of Nevada through its explanation of the functioning of the habitual criminal statutes. Because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), Saintal's ambiguity argument lacks merit. I deny Saintal federal habeas corpus relief for Ground Two.

### C. Ground Four[2]

In Ground Four, Saintal alleges that the two life sentences she received for stealing a purse and wallet violated her federal constitutional right prohibiting cruel and unusual punishment. ECF No. 29 at 24. In Saintal's appeal of her judgment of conviction, the Supreme Court of Nevada held that her argument that "two life sentences for one incident is cruel and unusual punishment when she has only been to jail once before" lacked merit. ECF No. 13-2 at 240 n.10. As this ground was denied on the merits by the Supreme Court of Nevada without analysis, the question here is whether Saintal has shown that there was no reasonable basis for that denial. *See Harrington*, 562 U.S. at 98.

The Eight Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. "[B]arbaric punishments" and "sentences that are disproportionate to the crime" are cruel and unusual punishments. *Solem v. Helm*, 463 U.S. 277, 284 (1983) (concluding that a habitual offender's sentence for a seventh nonviolent felony for life without the possibility of parole is disproportionate). The Eighth Amendment does not, however, mandate strict proportionality between the defendant's sentence and the crime. *See*

---

[2] Because Ground Three involves a discussion of the evidence presented at the trial, it is discussed following Ground Seven, Saintal's claim that there was insufficient evidence to support her convictions.

*Ewing v. California*, 538 U.S. 11, 23 (2003).  Rather, "only extreme sentences that are 'grossly disproportionate' to the crime" are forbidden. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). "In assessing the compliance of a non-capital sentence with the proportionality principle, [the Court] consider[s] 'objective factors'" such as "the severity of the penalty imposed and the gravity of the offense." *Taylor v. Lewis*, 460 F.3d 1093, 1098 (9th Cir. 2006).  "[S]uccessful challenges based on proportionality are 'exceedingly rare,' and deference is due legislative judgments on such matters." *Id.* (citing *Solem*, 463 U.S. at 289-90).

Saintal was adjudged guilty under Nevada's "Large Habitual Criminal Statute," Nevada Revised Statutes § 207.010(1)(b). ECF No. 13-2 at 104.  At the time of Saintal's sentencing, that statute provided that a habitual criminal is "a person convicted in this state of . . . [a]ny felony, who has previously been three times convicted . . . of any crime which under the laws of the situs of the crime or of this state would amount to a felony."  The statute further provided that a person found to be a large habitual criminal "shall be punished for a category A felony by imprisonment in the state prison" for life without the possibility of parole, life with the possibility of parole after ten years, or a definite term of 25 years with parole eligibility after ten years. Nev. Rev. Stat. § 207.010(1)(b)(1)-(3).  Saintal was sentenced to life with parole eligibility after ten years for the burglary conviction and life with parole eligibility after ten years for the grand larceny conviction. ECF No. 13-2 at 104. The state district court ordered these sentences to be served concurrently. *Id.*

Although Saintal received the second harshest punishment allowed by § 207.010(1)(b), I cannot conclude that her sentence was "'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001.  The sentencing judge stated that "nobody deserves to be in prison for life more than [Saintal].  [Saintal] steal[s] every single day, [she has] been doing it for decades, and [she]

14

will be stealing the week [she] get[s] out of prison." ECF No. 13-2 at 98.  Saintal's presentence investigation report provided that from June 20, 1985 to March 16, 2007, Saintal had five felony convictions, three gross misdemeanor convictions, and fourteen misdemeanor convictions. ECF No. 34 at 5.  Her felony convictions included attempted grand larceny, possession of a credit card without the cardholder's consent (twice), attempted forgery, and forgery. *Id.* at 5-8.  Her gross misdemeanor convictions included conspiracy to commit grand larceny (twice) and conspiracy to commit burglary. *Id.*  Saintal had been in prison four times and in jail thirteen times as of March 16, 2007. *Id.* at 5.

Although Saintal's sentence of life with the possibility of parole after ten years may appear disproportionate to the crimes of stealing a purse and a wallet, her sentence is based on the fact that she was adjudged to be a habitual criminal with at least three prior felonies. Nev. Rev. Stat. § 207.010(1)(b); *see Solem*, 463 U.S. at 297 ("[A] State is justified in punishing a recidivist more severely than it punishes a first offender.").  Saintal's extensive criminal record demonstrates that the aggregate gravity of her offenses was severe, such that her sentences do not violate the Eight Amendment. *Taylor*, 460 F.3d at 1098; *cf. Ramirez v. Castro*, 365 F.3d 755, 756-57 (9th Cir. 2004) (finding a sentence of 25 years to life was grossly disproportionate to three shoplifting offenses).  It is worth noting that Saintal is eligible for parole after serving ten years. *See Rummel v. Estelle*, 445 U.S. 263, (1980) ("[B]ecause parole is 'an established variation on imprisonment of convicted criminals,' . . . a proper assessment of [a state's] treatment of [a habeas petitioner] could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life.").  Saintal has not shown that there was no reasonable basis for the Supreme Court of Nevada's ruling that her claim lacked merit. *See Harrington*, 562 U.S. at 98.  I deny Saintal federal habeas relief for Ground Four.

**D.    Ground Five**

In Ground Five, Saintal alleges that her federal constitutional rights were violated when her trial counsel failed to investigate and present mitigating evidence of her mental health issues at sentencing. ECF No. 29 at 27; ECF No. 59 at 13.  The respondents argue that Saintal's mental health issues were not explored in the evidentiary hearing, so this claim lacks evidentiary support. ECF No. 54 at 11.  In Saintal's state habeas appeal, the Supreme Court of Nevada held:

> [A]ppellant argues that her trial counsel was ineffective for failing to investigate appellant's mental health to determine her competency and for mitigation purposes at the sentencing hearing.  Appellant asserts she took medication and was shaking during trial, which she alleges indicated that she had a mental hardship.  Appellant fails to demonstrate her trial counsel's performance was deficient or that she was prejudiced.  Counsel testified at the evidentiary hearing that they had no concerns regarding appellant's mental health and that she was very active in aiding in her defense.  That appellant used medication and shook during trial is insufficient to demonstrate that she did not have the ability to consult with her attorney with a reasonable degree of rational understanding and that she did not have a factual understanding of the proceedings against her. *See Melchor-Gloria v. State*, 99 Nev. 174, 179-80, 660 P.2d 109, 113 (1983) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  Appellant fails to demonstrate a reasonable probability of a different outcome at trial or at the sentencing hearing had further investigation of her mental health or mitigation evidence been performed as appellant fails to demonstrate what further investigation would have uncovered. *See Molina*, 120 Nev. at 192, 87 P.3d at 538.  Therefore, the district court did not err in denying this claim.

ECF No. 13-5 at 191-92.  This rejection of Saintal's claim was neither contrary to nor an unreasonable application of clearly established federal law.

Saintal's trial counsel testified at the post-conviction evidentiary hearing that "Saintal never directly raised [her] mental [health history] until after the trial." ECF No. 14-6 at 5, 11. At that point, before sentencing, they "talked in some depth about the loss of her family member and some of her issues." *Id.* at 11.  Saintal informed her trial counsel that her son had passed away. *Id.*  When Saintal's trial counsel inquired about her mental health issues, her response

dealt with "stress and things of that nature." *Id.* at 15. Although he did not present any

mitigating evidence in the form of Saintal's mental health issues at sentencing, Saintal's trial

counsel explained at the post-conviction evidentiary hearing that "[i]f prior to the time of

sentencing the client has represented" a mental health history or a psychological history,

investigating those issues can be helpful if there is "time to do it." *Id.* at 11-12.

Saintal testified at the post-conviction evidentiary hearing that she discussed her mental

health history with her trial counsel "[a]t the beginning of the trial." *Id.* at 50. Saintal explained

that she physically shook during the trial, and she told her trial counsel that she was on

medication at the time and it made her shake. *Id.* at 50. Saintal gave her trial counsel her

therapist's information so her therapist could explain the mediation and its effect on her. *Id.*

Counsel's performance at the penalty phase is measured against "prevailing professional

norms." *Strickland*, 466 U.S. at 688. I "must avoid the temptation to second-guess [counsel's]

performance or to indulge 'the distorting effects of hindsight.'" *Mayfield v. Woodford*, 270 F.3d

915, 927 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689). When challenging counsel's

actions in failing to present mitigating evidence during a sentencing hearing, the "principal

concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . .

whether the investigation supporting counsel's decision not to introduce mitigating evidence . . .

*was itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) (emphasis in original).

The Supreme Court of Nevada reasonably concluded that Saintal failed to demonstrate

prejudice. Her trial counsel was aware that Saintal shook due to her medication, was

experiencing stress, and lost her son. However, as the Supreme Court of Nevada reasonably

concluded, Saintal failed to demonstrate during her state habeas proceedings what further

information would have been uncovered had an investigation been conducted with this

information.[3]  Furthermore, Saintal's second trial counsel testified at the post-conviction

evidentiary hearing that he did not "think what [he] said to Judge Bell mattered oftentimes in

terms of how he was going to sentence, so he had his mind made up frequently before anyone

walked into the courtroom about what he was going to do with an individual's life." ECF No. 14-

6 at 46.  Accordingly, even if Saintal's trial counsel had uncovered information concerning

Saintal's mental health issues that he could have presented at the sentencing hearing, Saintal fails

to demonstrate that the result of her sentencing would have been different. *Strickland*, 466 U.S.

at 694; *see also Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not

established by mere speculation.").  I deny Saintal habeas corpus relief for Ground Five.

### E.    Ground Seven

In Ground Seven, Saintal alleges that her federal constitutional rights were violated

because there was insufficient evidence to support her convictions. ECF No. 29 at 31.

Specifically, Saintal contends that the State failed to prove both that the value of the stolen items

was more than $250.00 and that she had the intent to commit grand larceny when she entered the

store. *Id.* at 32.  In Saintal's appeal of her conviction, the Supreme Court of Nevada held:

> Saintal argues that the State failed to present sufficient evidence to prove that she
> committed grand larceny or burglary.

---

[3] Saintal explains that she was diagnosed with bipolar disorder, suffered from major
depressive episodes, experienced a rough childhood due to her father's alcoholism and her
mother's abuse, and was hospitalized because she was suicidal. ECF No. 29 at 27-28.  But the
medical records Saintal cites to in support of these issues were not presented previously. *See*
ECF No. 31-12; ECF No. 31-13.  These medical records were transmitted to the Federal Public
Defender in 2015 whereas the Supreme Court of Nevada affirmed the denial of Saintal's state
habeas petition in 2013. *See id.*; ECF No. 13-5 at 190.  I am restricted from considering evidence
that was not a part of the record reviewed by the Supreme Court of Nevada. *Cullen v. Pinholster*,
563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before
the state court that adjudicated the claim on the merits.").  Thus, I decline to consider these
medical records.

In reviewing whether there is sufficient evidence to support a jury's verdict, this court determines "'"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Mejia v. State*, 122 Nev. 487, 492, 134 P.3d 722, 725 (2006) (quoting *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). Where there is substantial evidence supporting the jury's verdict, it will not be overturned on appeal. *Hern v. State*, 97 Nev. 529, 531, 635 P.2d 278, 279 (1981). Substantial evidence is "'evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Brust v. State*, 108 Nev. 872, 874-75, 839 P.2d 1300, 1301 (1992) (quoting *First Interstate Bank v. Jafbros Auto Body*, 106 Nev. 54, 56, 787 P.2d 765, 767 (1990) (*abrogated on other grounds by Countrywide Home Loans v. Thitchener*, 124 Nev. ___, ___, 192 P.3d 243, 255 (2008)).

*Grand Larceny*

Saintal argues that the State failed to prove that the Coach purse and wallet had a combined value of more than $250. Saintal asserts that the true value of an item purchased at a Coach factory outlet cannot be determined unless it is scanned by the computer. Saintal argues that it is necessary to scan the price tag to determine if the item is being sold as marked, or for a lower promotional price. Because neither item was ever scanned, Saintal contends that the State could not prove the true value.

To prove that an accused is guilty of committing grand larceny, the State must demonstrate that she stole property valued at $250 or more. NRS 205.220(1)(c). An item's price tag is competent evidence of its value for the purpose of proving value to establish grand larceny. *Calbert v. State*, 99 Nev. 759, 759-60, 670 P.2d 576, 576 (1983). While Saintal attempts to distinguish her case from *Calbert* by noting that the price tags in *Calbert* were found on the items, whereas the price tags in the instant case were found either on the ground near Saintal's car or in her husband's hands, we conclude that this argument fails. As in *Calbert*, the price tags were competent evidence of the value of the merchandise because they matched the items stolen. Thus, viewed in the light most favorable to the State, we conclude that the price tags presented by the State provided sufficient evidence for a jury to reasonably conclude that Saintal was guilty of committing grand larceny.

*Burglary*

Next, Saintal contends that the State failed to prove that she was guilty of burglary because it did not present evidence that she entered the Coach store with the intent to commit larceny of a felony within.

Pursuant to NRS 205.060, the State in this case had to prove that Saintal entered the Coach store with the intent to commit grand or petit larceny within. We conclude that the State met its burden. Saintal appeared as if she did not want to

be bothered while at the store, left the store without the two wristlets that she legitimately purchased, and she and her husband were found with two stolen items. Therefore, by viewing the evidence in the light most favorable to the State, we conclude that a reasonable juror could conclude that Saintal entered the Coach store with the intent to commit larceny.

ECF No. 13-2 at 238-240. This ruling was reasonable.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be viewed "in the light most favorable to the prosecution." *See id*. Federal habeas relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of *Jackson*. *See Juan H.*, 408 F.3d at 1275 n.13.

Nyckie Xaysengsouk, an employee of the Coach Factory Outlet store, testified that Saintal came into the store about 20 minutes after it opened on March 28, 2006, wearing tracksuit pants. ECF No. 14-2 at 86-89. Xaysengsouk asked Saintal "if she was doing okay, and [Saintal] said she was fine [and] didn't seem like she wanted to be bothered." *Id.* at 89. A little while later, Xaysengsouk observed Saintal "trying to stuff . . . something in" her pants, "fixing the strap [of a purse called a swingpack] that was hanging out from [the waist area of] her pants," and then "shaking her leg, trying to make that bag fall." *Id.* at 90. Xaysengsouk testified that one of the "swingpack" purses was missing from the display and there were no other customers in

that area. *Id.* at 91-92. Similarly, Franklin Hironobu, another employee of the store, testified that he observed Saintal place a wallet from one of the trays in the store into her own purse. ECF No. 14-2 at 124, 128. Xaysengsouk testified that Saintal then purchased two wristlets, which were "de-sensored." *Id.* at 93.

Rebecca Cortese, the manager at the store, testified that she "was told by [her] employees to come to the floor because there was a theft in progress." ECF No. 14-2 at 147-148. When Saintal exited the store the "Sensormatic beeped." *Id.* at 149. Cortese requested Saintal's purchased items "so [she] could scan it to see if that's what" had set off the alarm. *Id.* Saintal complied, but Saintal's previously purchased items did not set off the alarm. *Id.* at 151. Cortese then asked for Saintal's purse so she could see if there was something in it that was setting off the alarm; however, Saintal refused. *Id.* at 152. Saintal then "took off walking out to the parking lot." *Id.* at 153. Cortese "started following at a distance behind her, just letting her know, ma'am, you know, I have your purchase, and she just kept walking, she would not turn around." *Id.*

Security arrived in the parking lot, and Saintal got into her vehicle. *Id.* at 154. Cortese, who was standing behind Saintal's vehicle, could see Saintal in the driver's seat of the vehicle moving things around. *Id.* at 154-55. The police arrived and Saintal eventually got out of her vehicle and agreed "to walk back to the store to walk through the Sensormatic." *Id.* at 155. When Saintal returned to the store and walked through the sensor, it did not alert, although Saintal did not have her own purse with her at this time. *Id.* at 156.

Las Vegas Metropolitan Police Officer Steven Perry testified that he was called to the store "for a petty larceny call" on March 28, 2006. ECF No. 14-2 at 205-06. Following Saintal's return to the store and successful reexamination by the store's sensor, Saintal stated that Officer

Perry "could look at [her] vehicle." *Id.* at 209. As they were walking back to Saintal's vehicle, Officer Perry "could see somebody at [Saintal's] vehicle with the car door open. It was a black male. He had his torso halfway inside the car." *Id.* When Officer Perry asked Saintal if the individual was her husband, she said "she didn't know if that was her husband." *Id.* at 225. Officer Perry later learned that the individual, Willie Smith, was Saintal's husband. *Id.* at 210.

When Officer Perry approached the vehicle, Smith "start[ed] walking westbound in the parking lot" with Coach packaging materials and Coach price tags in his hands. *Id.* at 210-11. Officer Perry conducted a search of Smith's vehicle and found a suitcase and duffle bag in the trunk with "what seemed to be new clothing" with manufacturer tags. *Id.* at 216. He also found three Coach bags and "two carry-on type bags" full of new clothes in the passenger portion of the vehicle. *Id.* at 217, 228. Officer Perry located the "swingpack" purse "on the driver's side rear floorboard" of Smith's vehicle. *Id.* at 218. Following a search of Saintal's vehicle, Officer Perry found the Coach wallet in the glovebox. *Id.* at 213. The wallet had nothing but a Colorado identification card for Belinda Howard in it. *Id.* at 214. Saintal stated that "[i]t was her sister's wallet." *Id.* at 214. Belinda Howard testified at the trial that she did not know Saintal and she had not seen her Colorado identification card for four or five years. ECF No. 14-2 at 244-246.

With regard to Coach's pricing of its merchandise, Xaysengsouk testified that "a lot of stuff goes on sale." *Id.* at 104. Xaysengsouk explained that every price tag has two printed prices: the manufacturer's suggested retrial price and the factory price. *Id.* at 108. Merchandise will be discounted from the lesser factory price if it goes on promotion, which would not be reflected on the price tag. *Id.* at 109. Xaysengsouk testified that "only the computer knows from day to day . . . what that price would be." *Id.* at 112. Xaysengsouk was never asked to check the price tags at issue by scanning them with the computer. *Id.* at 113.

Cortese testified that the factory price listed on the wallet price tag was $149.00. *Id.* at 162-63; *see also* ECF No. 32-2 at 5 (price tag of the signature clutch wallet showing that the factory price was $149.00); ECF No. 14-2 at 119 (testimony of Xaysengsouk that she believed the wallet was $149.00). The wallet was being offered at 20 percent off, so it cost $119.20. ECF No. 14-2 at 164-65. The purse "at that time was a new seasonable item" and "would not have any additional promotion on top of" the factory price. *Id.* at 165. The factory price of the purse was $139.00. *Id.*; *see also* ECF No. 32-2 at 3 (price tag of the swingpack purse showing that the factory price was $139.00); ECF No. 14-2 at 118 (testimony of Xaysengsouk that she believed the purse was $139.00). Therefore, the combined price of the wallet and the purse was $258.20. ECF No. 14-2 at 165.

The jury found Saintal guilty of grand larceny, burglary, possession of stolen property with a value less than $250.00, and conspiracy to possess stolen property. ECF No. 13-2 at 41-42. The count of possession of stolen property was later dismissed. *See* ECF No. 13-2 at 104. Saintal disputes the sufficiency of the evidence related to her grand larceny and burglary convictions. *See* ECF No. 29 at 31-35.

### 1. Grand larceny

At the time of her conviction, Nevada Revised Statute § 205.220(1)(a) provided that "a person commits grand larceny if the person . . . [i]ntentionally steals, takes and carries away, leads away or drives away . . . [p]ersonal goods or property, with a value of $250 or more owned by another person." The Supreme Court of Nevada reasonable concluded that there was sufficient evidence to convict Saintal of grand larceny.

The evidence described above is sufficient proof that Saintal stole personal goods owned by someone else. Nev. Rev. Stat. § 205.220(1)(a). The remaining issue is the value of the stolen

merchandise.  Saintal's defense at trial, and her argument in this petition, is that the State was required to scan the price tags at the register to confirm the price of the purse and wallet. ECF Nos. 29 at 34 and ECF No. 14-2 at 247, 250, 255 (defense witness Robert Maddox, an investigator for the Clark County Public Defender's Officer, testified that he purchased a Coach Signature wristlet, and when it was rung up, there was "[e]vidently . . . a ten percent or twenty percent *unpublished* discount" (emphasis added)).  Xaysengsouk testified that the price tag on the merchandise will not reflect whether an item has been discounted due to a promotional sale. ECF No. 14-2 at 109.  Sore manager Cortese testified that the "swingpack" purse, which had a factory price of $139.00, "was a new seasonable item" and "would not have any additional promotion on top of" the factory price. *Id.* at 165.  The wallet, which had a factory price of $149.00, was 20 percent off, meaning its value was $119.20. *Id.* at 162-65.  Thus, the aggregate value of the stolen merchandise was $258.20.  And, the Supreme Court of Nevada reasonably concluded that Nevada law allows an item's price tag to establish the value of property for grand larceny purposes. *See Calbert v. State*, 99 Nev. 759, 759-60, 670 P.2d 576, 576 (1983) ("The price tags . . . were competent evidence of the value of the stolen goods for purposes of establishing grand larceny."); *Jackson*, 443 U.S. at 324 n.16 (explaining that sufficiency of the evidence claims are judged by the elements defined by state law).  Accordingly, a rational factfinder viewing the evidence in the light most favorable to the prosecution could have found beyond a reasonable doubt that Saintal stole personal goods valued in excess of $250.00. *See In re Winship*, 397 U.S. at 364.

### 2.  Burglary

At the time of her conviction, Nevada Revised Statutes § 205.060(1) provided that "[a] person who, by day or night, enters any . . . store . . . with the intent to commit grand or petit

larceny . . . or any felony . . . is guilty of burglary." The Supreme Court of Nevada reasonably concluded that there was sufficient evidence to convict Saintal of burglary.

The evidence demonstrates that Saintal entered the Coach Factory Outlet store and stole a wallet and a purse. Saintal argues that there was insufficient evidence showing her intent. The State presented evidence that Saintal was wearing loose-fitting clothing, that she did not want to be bothered when approached by the sales associate, that she left her legitimately-purchased items with the store manager after the security alarm alerted, that she and Smith drove two vehicles to the shopping center, that Smith was apparently waiting nearby to assist Saintal in the concealment of the stolen merchandise, and that Smith had several bags containing new clothing with manufacturer tags still attached in his vehicle. ECF No. 14-2 at 89, 210-11, 216-218. This circumstantial evidence demonstrates that Saintal had "the intent to commit grand or petit larceny." Nev. Rev. Stat. § 205.060(1); *see also Grant v. State*, 117 Nev. 427, 435, 24 P.3d 761, 766 (2001) ("Intent need not be proved by direct evidence but can be inferred from conduct and circumstantial evidence."). Thus, the Supreme Court of Nevada reasonably concluded that the State met its burden of proving Saintal's intent, such that a rational factfinder viewing the evidence in the light most favorable to the prosecution could have found, beyond a reasonable doubt, that Saintal committed burglary. *See In re Winship*, 397 U.S. at 364. I deny Saintal federal habeas relief for Ground Seven.

## F.     Ground Three

In Ground Three, Saintal alleges that her federal constitutional rights were violated because the jury's verdicts were inconsistent. ECF No. 29 at 21. She explains that the jury found that she stole items worth more than $250.00 but possessed items worth less than $250.00. *Id.* In the appeal of Saintal's conviction, the Supreme Court of Nevada held:

Saintal argues that the district court abused its discretion when it denied her motion for a new trial. Saintal based the motion on her contention that the jury returned inconsistent verdicts because it found both that she was guilty of committing grand larceny, meaning the stolen items were worth more than $250, and that she was guilty of possessing stolen property valued at less than $250. Saintal contends that, in denying the motion, the district court violated her due process and Sixth Amendment rights because the jury should have been asked to resolve the apparent discrepancy.

This court reviews a district court's denial of a motion for a new trial for an abuse of discretion. *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 424-25 (2007). Verdicts are inconsistent if the jury finds that the defendant is guilty of two offenses that are mutually exclusive. *See Braunstein v. State*, 118 Nev. 68, 78, 40 P.3d 413, 420 (2002).

Here, we conclude that the district court did not abuse its discretion when it denied Saintal's motion for a new trial. We agree with the district court's determination that the verdicts were consistent. First, it was reasonable for the jury to conclude that Saintal was guilty of grand larceny for stealing the Coach wallet and the Coach purse, which together were worth more than $250. Second, it was also logical for the jury to find that Saintal was guilty of possessing stolen property valued at less than $250 because she was caught with only the wallet, which was worth less than $250, in her possession while her husband possessed the stolen purse.

Therefore, because the district court provided a reasonable explanation for the verdicts, we conclude that it did not abuse its discretion when it denied her motion for a new trial. Further, because the verdicts were consistent, we conclude that Saintal's due process and Sixth Amendment rights were not violated.

ECF No. 13-2 at 232-233. This ruling was reasonable.

As was discussed in Ground Seven, there was sufficient evidence demonstrating that Saintal's stole merchandise with an aggregate value of more than $250.00. With regard to the possession of stolen merchandise, Officer Terry testified that the "swingpack" purse was found in Saintal's husband's vehicle and the wallet was found in her vehicle. ECF No. 14-2 at 218, 213. The Supreme Court of Nevada reasonably concluded that it was logical for the jury to have determined that Saintal was guilty of possessing the stolen wallet, whose value was under $250.00, found in her vehicle but not guilty of possessing the purse, which was found in her

husband's vehicle. *Masoner v. Thurman*, 996 F.2d 1003, 1005 (9th Cir. 1993) ("If based on the evidence presented to the jury any rational fact finder could have found a consistent set of facts supporting both convictions, due process does not require that the convictions be vacated."); *see also* ECF No. 14-2 at 238 (Officer Perry's testimony that he never saw Saintal in possession of the purse). Accordingly, the Supreme Court of Nevada's conclusion that the verdicts were consistent is reasonable. I deny Saintal federal habeas relief for Ground Three.

## G.    Ground Nine

In Ground Nine, Saintal argues that her federal constitutional rights were violated when the trial judge refused to instruct the jury regarding law enforcement's failure to document and collect evidence. ECF No. 29 at 38. In Saintal's appeal of her conviction, the Supreme Court of Nevada held:

> Saintal contends that the district court erred when it refused to give her proposed jury instruction that stated that if the jury determined that the police were negligent in failing to obtain and preserve evidence, then the jury should presume that the unobtained evidence would have been favorable to Saintal.
>
> When conducting a criminal investigation, "police officers generally have no duty to collect all potential evidence." *Randolph v. State*, 117 Nev. 970, 987, 36 P.3d 424, 435 (2001). However, a failure to gather evidence warrants a sanction if (1) the defense proves that the evidence was material and (2) the district court determines that the failure to gather the evidence resulted from gross negligence or bad faith. *Id.* If the State's failure to obtain material evidence was caused by gross negligence, then "the defense is entitled to a presumption that the evidence would have been unfavorable to the State." *Id.* Conversely, if the State's failure to obtain material evidence resulted from mere negligence, then "no sanctions are imposed, but the defendant can examine the State's witnesses about the investigative deficiencies." *Id.*
>
> The district court denied Saintal's proposed jury instruction because it determined that, pursuant to *Randolph*, the instruction was only proper if Saintal demonstrated that the police had been grossly negligent in failing to obtain the evidence. The district court found that the police had merely been negligent and, therefore, Saintal's proposed jury instruction was improper. Because the district court correctly applied the law as stated in *Randolph*, we conclude that it did not abuse

1  its discretion when it denied Saintal's proposed jury instruction concerning her
2  theory of the case.

3  ECF No. 13-2 at 237-38. This ruling by the Supreme Court of Nevada was not objectively
4  unreasonable.

5      Issues relating to jury instructions are not cognizable in federal habeas corpus unless they
6  violate due process. *Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *see also Gilmore v. Taylor*, 508
7  U.S. 333, 342 (1993) ("[W]e have never said that the possibility of a jury misapplying state law
8  gives rise to federal constitutional error."); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)
9  (explaining that the question is "'whether the ailing instruction by itself so infected the entire
10  trial that the resulting conviction violates due process', . . . not merely whether 'the instruction is
11  undesirable, erroneous, or even universally condemned'" (quoting *Cupp v. Naughten*, 414 U.S.
12  141, 146-47 (1973))). When reviewing jury instructions, the court evaluates the instructions as a
13  whole. *Estelle*, 502 U.S. at 72 (explaining that a challenged instruction "'may not be judged in
14  artificial isolation,' but must be considered in the context of the instructions as a whole and the
15  trial record" (quoting *Cupp*, 414 U.S. at 147)). Even if instructions contain a constitutional error,
16  the court must then "apply the harmless-error analysis mandated by *Brecht*[ *v. Abrahamson*, 507
17  U.S. 619 (1993)]." *Calderon v. Coleman,* 525 U.S. 141, 146 (1998).

18      Saintal contends that her due process rights were violated because the excluded jury
19  instruction deprived her of "a meaningful opportunity to present a complete defense." *California*
20  *v. Trombetta*, 467 U.S. 479, 485 (1984). The excluded jury instruction stated: "If you determine
21  that the police were negligent in failing to obtain and preserve the swing pack, wallet or store
22  security video tape of this incident, Ms. Saintal is entitled to the presumption that the evidence
23  not obtained would have been favorable to the defense." ECF No. 13-2 at 39.

28

During the discussion of this proposed jury instruction, the State explained that the police did not photograph the purse or the wallet, which may have been important because "[t]here's [serial] numbers inside the purses." ECF No. 14-2 at 138-139. The State also explained that "[t]here was surveillance video, but the store never gave it to the police and the police never asked if they had store video, so the officer didn't even know." *Id.* at 138. The State explained that the surveillance video did not show Saintal doing anything. *Id.* at 140. The trial judge held that Saintal would be entitled to her proposed jury instruction only if she could prove that the police officer acted with gross negligence. *Id.* at 142. When Saintal's trial counsel explained that it was her position that the police officer acted with gross negligence, the trial judge responded, "Not a chance." *Id.* The trial judge elaborated, "I think they may have been negligent, but I don't see any gross negligence here." *Id.* at 143.

The Supreme Court of Nevada held that the trial judge did not abuse his discretion in denying the proposed jury instruction. This holding was reasonable. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Although law enforcement was negligent in not photographing the wallet or the purse and in not collecting the surveillance video, Saintal cannot show bad faith. Officer Perry testified that "to the best of [his] knowledge there was [sic] no serial numbers on" the wallet or the purse and that he was never told that "factory outlet items are routinely marked . . . [with] a secret mark on the inside of the purse to identify it." ECF No. 14-2 at 239-40. Officer Perry also testified that he did not remember observing any security cameras in the store, that he "know[s] that in the outlet mall the average stores there do not have security cameras," and that the store manager never mentioned the surveillance video to him. *Id.* at 240-41. Because Officer Perry

was not aware that the wallet and purse may have identifying marks, it cannot be concluded that

his failure to take pictures of the wallet and purse amounted to bad faith. *See Youngblood*, 488

U.S. at 58. Similarly, because Officer Perry was not alerted to the fact that the store had security

cameras, it cannot be concluded that his failure to secure the surveillance footage amounted to

bad faith. *Id.* Accordingly, Saintal has not shown that the exclusion of her proposed jury

instruction violated due process. *Estelle,* 502 U.S. at 72. I deny Saintal federal habeas corpus

relief for Ground Nine.

### H.    Ground Ten

In Ground Ten, Saintal argues that the cumulative effect of her trial counsel's errors

violated her federal constitutional rights. ECF No. 29 at 40. In her appeal of the denial of her

state habeas petition, the Supreme Court of Nevada held: "As appellant fails to demonstrate

deficiency or prejudice for any of her claims, she fails to demonstrate cumulative errors of

counsel caused her to receive ineffective assistance of counsel. Therefore, the district court did

not err in denying this claim." ECF No. 13-5 at 193. This ruling was reasonable as Saintal has

failed to demonstrate any errors. I deny Saintal federal habeas corpus relief for Ground Ten.[4]

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Saintal. Rule 11 of the Rules Governing Section 2254

Cases requires me to issue or deny a certificate of appealability (COA). I have evaluated the

---

[4] Saintal requested that I conduct an evidentiary hearing "where [she] can offer proof concerning the allegations [in her] Petition." ECF No. 29 at 41; ECF No. 59 at 30. She fails to explain what evidence would be presented at an evidentiary hearing. I have determined that Saintal is not entitled to relief, and neither further factual development nor any evidence that may be proffered at a hearing would affect my decision. I deny Saintal's request for an evidentiary hearing.

claims in the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying these standards, a certificate of appealability is unwarranted.

**V.    CONCLUSION**

I THEREFORE ORDER that the Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254(d) (**ECF No. 29**) **is DENIED**.

I FURTHER ORDER that Saintal is denied a certificate of appealability.

I FURTHER ORDER the Clerk of Court to substitute Dwight Neven for Sheryl Foster as the respondent warden on the docket for this case.

I FURTHER ORDER the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 17th day of January, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE